TOPEKA BRIDGE COMPANY v. J. F. CUMMINGS.

3   55
54  427

*Error from Shawnee County.*

The petition set forth a subscription for a share in the Bridge Company signed by defendant for one share ( $100); that the company had built a bridge, but it did not appear that more than $600 in capital stock had been subscribed; the charter of the company providing that the capital stock "shall be $100,000," on error from a decision sustaining a demurrer to

the petition for want of facts; *Held* that an averment of facts necessary to show such an organization of the company with the capital required by the charter is required, that unless the whole amount of stock was, in good faith subscribed, the corporation was not authorized to act, and there could be no obligation to pay.

The contract of the subscriber was for one share or one thousandth part of the capital stock of a company with capital not of $600, but of $100,000, and to pay such assessments upon that part of the stock as might be necessary to build the bridge, and defendant is under no obligations to pay a company with a capital of $600.

The petition in this case set forth :

The Topeka Bridge Company, a corporation duly incorporated under an act passed by the Governor and Legislative Assembly of the territory of Kansas, entitled "An act to incorporate the Topeka Bridge Company," approved Feb. 14th, 1857, plaintiff, says that the defendant J. F. Cummings, on the 21st Nov. 1857, made his subscription of that date to the capital stock of The Topeka Bridge Company, a corporation incorporated for the purpose of building a bridge across the Kansas River at or near the city of Topeka, of which the following is a copy. (Giving copy of the subscription set out in the opinion.)

And then and there delivered the same to said plaintiff, and thereby promised to pay to said plaintiff in installments thereon, as may be required by the rules and regulations of the company; and the said plaintiff avers that the said company did build a bridge across the Kansas River at the city of Topeka, and at a point within the limits prescribed by said act; and that by the rules and regulations of said company, copies of which are filed herewith, and by incorporation made a part of this petition, said defendant was required to pay installments upon his said subscription to the capital stock of said company, giving such installments and notice of assessments, and setting forth the rules of the company and the minutes of the company meetings when the assessments on the stock subscribed were made.

To this petition a demurrer was filed containing all the grounds of demurrer known to the Code. The demurrer was sustained on the 6th ground set forth in the Code. On exceptions to that ruling the case was brought up to this court.

The case was argued by *J. P. Greer* for plaintiffs in error, and by *Gilchrist* for defendant in error.

*J. P. Greer & W. P. Douthitt*, for plaintiffs in error, submitted:

1. A demurrer admits the facts pleaded and refers the question of their legal sufficiency to the court. 1 *Chitty Pl.* 661.

2. Section 124 Civil Code, provides that the allegations of the petition shall be liberally construed in determining its effect. A material allegation in a pleading is one essential to the claim or defense which could not safely be stricken out. (*Sec.* 138 *Civil Code*). Neither presumptions of law nor matters of which judicial notice is taken, need be stated. *Sec.* 139, *Id.*

Taking these rules for a guide, the petition is legally and technically sufficient. Defendant can demurr only when the defect appears on its face. *Secs.* 96-98, *Civ. Code.*

3. Under the Code there are six distinct grounds of demurrer. This case stands precisely as if the defendant had waived all the grounds of demurrer, only that the petition does not state facts sufficient to constitute a cause of action; therefore he cannot in argument, insist on any other objection apparent on the face of the petition, as that the plaintiff has not the capacity to sue. (*Code sec.* 97; *Swan's Pl.*, 239-241.) No defects of former indefiniteness or duplicity or irrelevant matter or omissions, are fatal to a pleading on demurrer, if taking all the facts to be admitted as stated, they furnish any cause of action whatever. (*Trustees* v. *Odlin*, 8 *Ohio St. R.*, 293; *Prindle* v. *Caruthers* 15th *N. Y.* (1st

8

*Smith*,) 425; *Swan's Pl. & Pr.*, 238.) So that the question of the plaintiff's legal entity or capacity to sue is not properly before this court.

4. Again it is said that a corporation cannot only not make any contract forbidden by its charter, but in general can make no contract, not necessary either directly or indirectly to enable it to carry out the purpose and object of its creation.

The 2d section of the act of incorporation provides expressly, that the company shall have power to receive and collect subscriptions to its capital stock. *Laws of* 1857, 151.

It is said to be material to the right of the plaintiff to maintain this suit that the whole number of shares in the capital stock should first be taken up. It appears from the rules and regulations of the company, (which are made part of the petition,) that the assessments were made upon all the capital stock of the company. It will be seen on reference to the cases where it has been held necessary, that the whole of the capital stock should be subscribed for before payment is required, for the general purposes of the corporation, that there was some condition in the act of incorporation to that effect which is not so in this case. The act gives this company power to receive and collect subscriptions to the stock without limit or condition, and a subscription of the whole amount of stock is not a condition precedent to a legal corporate existence, where it is not made so by the act of incorporation. *Salem Mill-dam Cor.* v. *Refres*, 6 *Pick.*, 23, *9th Id.* 195; *Renselier & Washington Plank R. Co.* v. *Rice*, 7 *Barb.*, 166; *Waterford, Wexford, Wicklow and Dublin Railway Co.* v. *Dalbiac*, 4 *Eng. L. and Eq. R.*, 455; *Trumbull Co. Mut. Fire Ins. Co.* v. *Horner*, 17*th Ohio R.*, 407; *Little* v. *Obrian*, 9*th Massachusetts*, 426.) These assessments were made and the subscriptions called for to enable the company to meet the wants and liabilities of said company. Nor does it lie in the power of a member of the company to avoid his sub-

scription after the objects of the company have been accomplished and large liabilities requiring the aid of subscriptions to discharge them, have been incurred on the faith of such subscriptions, and which have not been and cannot be without them.

5. It is also agreed that there is no consideration alleged in the petition, and that the instrument on which this action is brought does not impart a consideration.

A subscription for shares in the stock of a joint stock incorporated company is a contract, and the interest thereby acquired is a sufficient consideration to enable the company to support an action against the subscriber for the recovery of the amount subscribed. *Angell & Ames on Cor.*, secs. 517-518-519, *and note* 1; *Milford & Chillicothe Turnpike Co.* v. *Brush*, 10th *Ohio*, 114; 21st *Barb.*, 64.

6. The defendant having entered into a contract with the plaintiffs in their corporation name, he thereby admits them a duly constituted body politic and corporate under such name. *Dutchess Cotton Manf. Co.* v. *Davis*, 14th *Johnson*, 245; *Rice* v. *Rock Island & Alton R. R. Co.*, 21st *Ill.*, 95; *Armstrong* v. *Huston's heirs*, 8th *Ohio*, 553; 6th *Cowen*, 26.

*Gilchrist & Williams*, for defendant in error, submitted:

1. Corporations under the common law "maintain a perpetual succession and enjoy a kind of legal immortality." 1 *Blackst. Com.*, 467; *Dartmouth College* v. *Woodward*, 4 *Wheat. R.*, 636, (4 *Pet. Condensed*).

2. Corporations are divided into aggregate and sole (1 *Blackst. Com.*, 469). Those in use among us generally are aggregate. (2 *Kent Com.*, 274). Public, are such as are created by the government for political purposes. (2 *Kent Com.*, 273-5). "If the foundation be private the corporation is private, however extensive the uses may be to which it is devoted." *U. S. Bank* v. *Planters Bank*, 9 *Wheat. R.*, 907; *Bank S. C.* v. *Gibbs*, 3 *McCord R.* 377.

3. From the foregoing authorities it will be seen that the act entitled " An act to incorporate The Topeka Bridge Company " of Feb. 14th, 1857, was a *private* grant, and it became a private franchise.

This grant is two-fold. First, the right and privilege of building and maintaining a bridge across the Kansas River at the point named for the period mentioned. Secondly, said Crane and others are authorized to form a company to be known as " The Topeka Bridge Company," the capital stock of which shall be one hundred thousand dollars, to be divided into shares of one hundred dollars each, and have power to prescribe by-laws for the regulation of said company to receive and collect subscriptions to such capital stock, &c.

The right and privilege of building and maintaining a bridge, became, on the consummation of this act of the legislature, their franchise as individuals. The right to form a company, became still another independent franchise of their own, whenever they chose to exercise the power conferred upon them as corporators in forming the Topeka Bridge Company. The former became absolute on the 14th of Feb. 1857, the latter only when they chose to exercise it. The last was purely an incident to the first, and to it was attached the above conditions.

The 2d and 3d sections of the act in question contain the grant of corporate powers, and in them all powers and duties are clearly and specifically defined. And to said sections alone we must look for the objects and purposes for which the corporation was created. The corporators, upon accepting the grant, became the " artificial being " and the charter, divesting them of their individual capacities for transacting this business, becomes as it were the law of their nature; and every act of the corporation henceforth must conform to that law ; and it requires the act of these corporators, as a corporation, to reflect the corporate will. As the act of one person reflects his individual will, so does

the act of the corporate body, in conformity to the charter, reflect its artificial corporate will. The series of corporate acts is the stream of which the charter is the fountain.

That corporations must carry out the objects and purposes for which they were created, as expressed in the charter is a proposition too clear to admit of doubt. *Angell & Ames Corp.*, 192, *sec.* 12; 1 *Blackst. Com.*, 479; *Head & Amory*, v. *The Providence Ins. Co.*, 2 *Cranch R.*, 127; 1 *Peters Cond. R.*, 374-5; *Dartmouth College* v. *Woodward*, 4 *Wheat. R.*, 636; *Bank of U. S.* v. *Dandridge*, 12 *Id*, 64; 6 *Peters Cond. R.*, 444; *Beatty* v. *Lessee of Knowles*, 4 *Peters R.*, 168; *Bank of Augusta* v. *Earle*, 13 *Id*. 587.

Whenever a corporation makes a contract, it is the contract of the legal entity; of the artificial being created by the charter, and not the contract of the individual members. The only rights it can claim are the rights which are given to it in that character, and not the rights which belong to its members as citizens of a state. A corporation can make no contracts, and do no acts either within or without the state which creates it, except such as are authorized by its charter; and these acts must also be done by such officers or agents, and in such manner as the charter authorizes." *Runyan* v. *Coster*, 14 *Peters R.*, 122.

Chancellor KENT, in his Commentaries, 2d Vol.* 299, says: "The modern doctrine is, to consider corporations as having such powers as are specifically granted by the act of incorporation, or as are necessary for the purpose of carrying into effect the powers expressly granted, and as not having any other. The Supreme Court of the United States declared this obvious doctrine, and it has been repeated in the decisions of the state courts. No rule of law comes with a more reasonable application, considering how lavishly charter privileges have been granted. As corporations are the mere creatures of law, established for special purposes, and derive all their powers from the acts creating them, it is perfectly just and proper they should

be obliged strictly to show their authority for the business they assume, and be confined in their operations to the mode and manner, and subject matter prescribed. 1 *Ves & Beames R.*, 126; *Serg & Rawle R.*, 530; 2 *Kent Com.** 300, *note* " *a*."

The different states of the Union have followed the doctrine of the Supreme Court of the United States and that of Chancellor Kent, both in spirit and letter; all holding without exception, it is believed, that corporate powers must be strictly construed and rigidly confined to the letter and spirit of the grant. Corporations take nothing by implication. *The People* v. *Utica Ins. Co.*, 15 *Johns. R.*, 358-383; 19 *Ill. S. P.*; *N. Y. Fire Ins. Co.* v. *Ely*, 5 *Com. R.*, 560; *N. Y. Fire Ins. Co.* v. *Sturges*, 2 *Cow. R.*, 664-675; *N. R. Ins. Co.* v. *Lawrence*, 3 *Wend. R.*, 709; 7 *Wend.*, 31; 3 *Pick*, 232; 1 *Stewart's Ala. R.*, 299; 9 *Conn. R.*, 180; *Angell & Ames Corp.*, 236, (*2d ed.*); *Sharp* v. *Sprier & Sharp* v. *Johnson*, 4 *Hill*, 76 92.

And what has been so clearly and definitely settled in the federal and other state courts has been also settled in our own Supreme Court, with equal perspicuity and vigor.

In the case of the City of Leavenworth *v.* Norton, Guardian &c. *et al.*, (1 Kans. R., 432,) Bailey, J. said : " All powers not expressly granted by the charter, or necessary to carry out the powers expressly granted, are denied. The corporation can take nothing by implication."

Applying the above criterion to the act authorizing said Crane and others to form a company, and we have a grant from the territorial legislative power which authorized them, 1. To form a company known as the Topeka Bridge Company. 2. The capital stock of which shall be one hundred thousand dollars. 3. The said capital stock shall be divided into shares of one hundred dollars each. 4. The power to prescribe by-laws for the regulation of said company. 5. To receive and collect subscriptions to such capital stock. 6. To establish and collect tolls for crossing

said bridge. 7. To sue and be sued. 8. To hold and convey real estate, so much as may be necessary for the construction of said bridge. 9. And do all other acts and things, and exercise all the rights and privileges appertaining to corporations. These things were absolutely necessary to be done by the said Crane and others before said company had a legal existence.

Does the petition say that either or all of these conditions precedent were performed? It certainly does not contain one word or sentence that can be tortured into such an allegation. The petition says, that "The Topeka Bridge Company, a corporation duly incorporated under an act &c., passed on the 14th of Feb. 1857." The said act itself plainly shows that the company was not incorporated. Hence this allegation of the petition is stultified and means nothing, and under the Code must be rejected as surplusage. And again the petition says: "And the said plaintiff avers that said company did build a bridge across the Kansas River at the city of Topeka, and at a point within the limits prescribed by said act," and we are thus led to the happy conclusion that the "said company," by building a bridge became a corporation, though but six hundred dollars had been subscribed, as the petition shows. Under such a grant as the act in question, the court will take notice of the act when referred to by its title, but it cannot take judicial notice of a corporation to be formed in the future, which may or may not exist, and about the existence or formation of which the pleader is studiously silent. In such cases the court will take judicial notice of the law but not of the intended corporation. *Nash's Plead. and Prac., p.* 800, *note* "*H.*"

The court can know of the existence of a corporation not created such by positive statute in no other way than by the record affirmatively showing that the grant has been duly accepted. Now the evidence of any material fact cannot be given unless the fact itself be alleged, and

when something is required by the act of incorporation to be done in future to entitle it to exercise corporate powers, it is necessary to both allege and prove facts requisite to enable the company to exercise said powers. The corpo- ration in question was not declared such by statute; and the corporators had to respond to the grant by acceptance and *user*, or by such acts of *user*, as amounted to an accept- ance, in order to give full effect to the act incorporating them. *Angell & Ames Corp., pp.* 504-5-51; *Fire Depart- ment* v. *Kip,* 10 *Wend.,* 269; 11 *Ohio R.,* 276-280; 1 *Caines,* 381; *Opin. Ch. J. Lewis, and note at the end of the decision. Angell & Ames Corp., pp.* 416-17-18.

That a grant must be accepted by the grantees before it is binding upon either, is most evident also. *Angell & Ames Corp., p.* 51; *Justice Wilmot in the case of Rex* v. *Vice Ch. of Cambridge,* 3 *Burr,* 1661; *Dartmouth College* v. *Woodward,* 4 *Wheat.,* 518; *Webster's works, p.* 496.

" In all cases relative to charters, the acceptance of them is uniformly alleged in the pleadings." This shows the general understanding of the law, that they are grants or contracts; and that parties are necessary to give them force and validity. *King* v. *Dr. Anderson,* 4 *Burr,* 2200.

These terms, " acceptance " and " assent," are the very language of contract. In Ellis *v.* Marshall, 2 Mass. R. 269, it was expressly adjudged that the naming of the de- fendant among others in an act of incorporation did not of itself make him a corporator; and that his assent was nec- essary to that end. *Dart. Col.* v. *Woodward,* 4 *Wheat.,* 518; *Lincoln and Kent Bank* v. *Richardson,* 1 *Greenl.,* (*Me.*) *R.,* 79; *Fire Dep.* v. *Kip,* 10 *Wend.,* 266.

The plaintiff in error maintained in the court below, that *user* was a valid acceptance of the charter, and the allega- tion " that the said company built a bridge across the Kan- sas River at a point within the limits prescribed in said act," was a good allegation of *user,* and hence acceptance. We admit the premise, but deny the conclusion, when applied

to the case at bar. We maintain that there could be no valid *user* of the grant until the $100,000 capital stock had been subscribed, and the said stock had been divided into shares of $100 each after the company had been formed. And had the pleader seen fit to set out his cause of action by alleging that these conditions had been complied with, and then added *user*, his plea then might have approximated, setting out a full cause of action. If the alleged company built a bridge before the above conditions were complied with, it was a conditional acceptance of the grant, and no more. A grant cannot be accepted with conditions. (*Angell & Ames Corp., pp.* 54-7). Neither can there be a partial acceptance any more than there can be an acceptance by part of the persons intended to be incorporated. *Ibid. p.* 55.

"It has already been intimated that where persons composing an intended corporation, act under the charter, it amounts to an acceptance. It is usual whenever a charter is pleaded and no direct and express acceptance can be averred, to show usage as could not have prevailed unless it had been received, and from which the court may necessarily infer an acceptance." It does not follow that because plaintiff built a bridge he therefore complied with all the conditions precedent required in the charter. A general allegation that plaintiff had performed all the conditions precedent required on his part, under the act, would have been sufficient under section 131 of the Code. The Code deals with substance and not with forms, and the rule of pleading, (says Swan's Plead. & Prac., p. 146,) may be stated in this form: "Whatever will in law entitle a party to an action, those facts alone need be stated."

In all cases facts material to the relief sought or defense made, need only to be stated, and the allegations of fact are frequently shaped with a view to the relief asked. *National Lancers* v. *Lovering*, 10 *Foster* (*N. H.*) *R.*, 515; 11 *How. Pr. R..* 186-216.

9

Hence we conclude that the petition is deficient because it does not allege that the said Topeka Bridge Company was duly organized under the act of the territorial legis-lature, entitled "An act to incorporate the Topeka Bridge Company." Approved Feb. 14th, 1857.

The statute of 1855, p. 187, provides in section 6 that "if any corporation hereafter created by the legislature shall not organize and commence the transaction of busi-ness, within one year from the date of its incorporation, its corporate powers shall cease." This law was so modified by an act of the territorial legislature (Laws of 1857, p. 70, Incorporation,) that corporations were allowed three years from the date of the expiration of the charter, under the law of 1855, to commence business, leaving however the restrictions contained in the law of '55, in case the corpo-rate powers were not thus exercised in full force. The pleader in the case at bar has not relieved us in any way of the restrictions imposed upon the incorporation, by these provisions of law, and this court is left a second time to presume in favor of the corporation. Now, inasmuch as all corporate powers ceased at the expiration of three years from the date of its approval by operation of this law, if the grant was accepted by organizing and commencing business, the plaintiff should have relieved the court by stating facts sufficient to free his cause of action from posi-tive statutory inhibitions. It may be insisted that these restrictions imposed by the law should be interposed only by the defendant, as in a case where the statute of limita-tions has barred a cause of action. Such reasoning will not apply to this case. When the statute of limitations is interposed as a defense to a cause of action, the plea pre-supposes a former legal liability or obligation, but avoids the same by withholding the remedy afforded by the law. The power of the court is invoked to protect a defendant from harrassing suits upon stale demands, by a plea of the statute, popularly termed a confession and avoidance. But

as we have seen in the case of Beatty *v.* Lessee of Knowler, (*supra*), the exercise of corporate franchise being restrictive of individual rights, cannot be extended beyond the letter and spirit of the act of incorporation. *Angell & Ames Corp., p.* 192, *sec.* 12; *Dartmouth College* v. *Woodward,* 4 *Wheat.,* 636.

It should seem that no such presumption can arise in favor of said "artificial being existing only in contemplation of law" upon demurrer to its petition. The demurrer admits every material allegation contained in the petition it is true, but it does not admit the existence of an "artificial being," when its existence is not alleged, and against the existence of which every presumption is made. We cannot presume the legal formation of an "artificial being" "existing only in contemplation of law."

2d. Said Crane and others had power to form a company, the capital stock of which should be one hundred thousand dollars. We are to gather the intention of the legislature solely from the act when it is expressed in plain and unambiguous terms. (*Lochnane* v. *Elliott, et al.,* 1 *Kans. R.* 126.) We are to construe the corporate grant strictly. (*City of Leavenworth* v. *Norton, et al., ante*). And powers not expressly conferred are withheld. It was argued in the court below that the sentence in the charter "the capital stock of which shall be $100,000," should be construed as though it read, may be $100,000. We maintain that when "shall" is used in a law which must be strictly construed it is not a convertible term, and no other word can supply its place, which is less comprehensive and more vague in meaning. The reason is obvious. *Webster arguendo Dartmouth College* v. *Woodward,* 5 *Webster's works;* *Act Incorporating Laws,* 1857, *p.* 151, *sec.* 2.

There is no case, as far as we have seen, that maintains the doctrine that *shall* may under any circumstances be construed to mean *may,* but the converse of this proposition has often been held. We maintain that *shall* is per-

emptory in signification, while *may* is permissive. *Newburgh Turnpike Co.* v. *Miller*, 5 *Johns., Ch. R.*\* 113-14; *Alderman Bockwell's case*, 1 *Vern.*, 152; *King* v. *Barlow*, *as reported in Salkeld*; 2 *Salk.*, 609, *Cath.*, 293; *The King* v. *The Inhabitants of Derby, Skinner*, 307; *Mayor and Corp. N. Y.* v. *Furze*, 3 *Hill R.*, 612; *People* v. *Corp. of Albany*, 11 *Wend. R.*, 539; *Malcolm* v. *Rogers*, 5 *Cow.*, 188; *Catle* v. *Howard*, 9 *Wis. R.*, 309; *Sedgwick on Stat. and Const. L., pp.* 340-344.

The capital stock was fixed definitely at $100,000, and that amount must have been subscribed before the corporation had a legal existence. It was a condition precedent to the legal existence of the company. If a condition precedent, the petition must have alleged the performance of it to make a cause of action under section 131 of the Code. Was it necessary to allege in the petition that the entire amount of the capital stock was subscribed to enable the plaintiff to state a full cause of action? It must be supposed that the legislature meant what was said, when they provided that the capital stock of the company "shall be one hundred thousand dollars." Many charters found in the same volume of acts (57), specify that when $5,000 or $50,000 has been subscribed, *then* the corporation may commence business. *Charter of the "St. George Bridge Co.," Laws* 1857, *p.* 152, *Sec.* 2.

The stock thus paid in operates as a guaranty to persons dealing with the corporation, that they are secure to the extent of the capital paid in, at least. Now in the absence of any provision in the charter of the Topeka Bridge Company when it may commence business, it cannot with reason be contended that under the charter the company was authorized to commence business with no capital stock whatever subscribed. Nor is it a question of degree; as well might the corporation commence business and levy assessments for its general purposes, with $1,00 or $5,00 subscribed to its capital stock, as $10,000, or any sum un-

der the $100,000 specified in the charter, if it could commence at all, or levy any assessment for general purposes before the entire $100,000 of stock had been *bona fide* subscribed. A more reasonable and equitable construction should be placed upon the charter,—a construction when applied to the case at bar which plainly and unequivocally requires that the entire $100,000 should be subscribed before any assessment could be legally levied upon " such capital stock."

Independent however of the charter, the intention of the legislature could not have been to create a corporation where no capital stock or a mere nominal capital stock was required to be subscribed. But their intention must have been what the charter unequivocally expresses, that " the capital stock of which shall be $100,000." And before any legal assessment could be made, that the entire amount of such capital stock should be subscribed. And what is so clear upon principle is supported by authority. *Fry's Executor* v. *Lexington and Big Sandy R. R. Co.*, 2 *Met.* (*Ky.*) *R.*, *Simpson, Ch. J.*; *Stoneham Branch R. R. Co.* v, *Gould*, 2 *Gray R.*, 278; 2 *Id.* 277; *N. H. Cent. R. R.* v. *Johnson*, 10 *Foster R.*, 390; *Contoocook Val. R. R.* v. *Barker*, 32 *N. H.*, 1 *Fogg R.*, 363, and numerous New England and English cases there cited. *Trott* v. *Sarchette et al.*, 10 *O. St.*, 241; *Angell & Ames on Corp.*, *p.* 507, (2d ed.); *Williams* v. *Bank of Mich.*, 7 *Wend. R.*, 540; *Welland Canal Co.* v. *Hathaway*, 8 *Wend. R.*, 480; *U. S.* v. *Stearns*, 15 *Id.* 316; 5 *Mass. R.*, 80; 3 *Hill R.*, 612.

All contracts of this character are made with reference to the provisions of the charter, and the statutory law in force at the time they are entered into. Analyze this subscription, then, with reference to the charter, and we have this: "I agree *to take* and *pay for*, in installments, as required, one share in the Topeka Bridge Company, the capital stock of which shall be $100,000, to be divided into shares of $100 each." The charter by its terms compels

the company to divide the capital stock into shares of $100 each. The 17th section of the general corporation act in force at the time this charter was made, provides, (Statutes 1855, p. 189,) that corporations may sue their own members and recover from them all "arrears" or other "debts" "which now are, or may be hereafter owing to them," in the same manner as though they were not members of their body, any law or custom to the contrary notwithstanding.

This point of the case, then, turns upon this one. proposition; can this plaintiff maintain this suit against this defendant when the entire amount of the capital stock of the company required by the charter, as appears from the record, has not been subscribed?

The defendant agreed to *take* and *pay* for, one thousandth part of the capital stock of the company, but the petition shows that plaintiff intends to recover upon an alleged subscription where the promise was to pay one-sixth of the capital stock. *Stoneham Branch R. R.* v. *Gould*, 2 *Gray R.*, 277; *Salem Mill dam* v. *Ropes*, 6 *Pick. R.*, 23, *and* 9 *Id.* 187; *Cabot and West Springfield Bridge* v. *Chapin*, 6 *Cush. R.*, 50; *Worcester and Nashua R. R. Co.* v. *Hindes*, 8 *Id.* 110; *Atlantic Cotton Mills* v. *Abbott*, 9 *Id.* 423; *Bryant* v. *Goodnow*, 5 *Pick. R.* 2d ed.) 230, *and note* 1; *Vide* 1 *Dane's Abr.*, 457, *D.* 12, *Art.* 1, *and the numerous authorities cited by that author. Newb. Bridge* v. *Story*, 6 *Pick. R.*, 45; *Contoocook Val. R. R.* v. *Barker*, 32 *N. H.*, 1 *Fogg R.*, 369; *Central Turnp. Corp.* v. *Valentine*, 10 *Pick.*, 142; *Smith* v. *Natchez Steamboat Co.*, 1 *How.*, 479; *South Bay Meadow Dam Co.* v. *Gray*, 30 *Maine*, 549; *Dutchess Cotton Manf. Co.* v. *Davis*,. 14 *Johns.*, 238; *Townsend* v. *Goervey*, 19 *Wend.* 424; *Glover* v. *Tuck*, 24 *Id.* 153; *Central Turnp. Corp.* v. *Valentine*, 10 *Pick.* 142; *Cabbot & West Springfield Bridge* v. *Chapin et al.*, 6 *Cush.*, 50. The English authorities are to the same effect. *Fox* v. *Clifton* 6 *Bingham*, 776; *Woutnes* v. *Shairp*, 4 *Manning, Granger & Scot*, 404; *Pitchferd* v. *Davis*, 5 *Meeson & Wetsby*, 2;

*Norwich & Lowstaft Co.* v. *Theobold*, 1 *Moody & Melkin*, 151; *Littleton Manuf. Co.* v. *Parker*, 14 *N. H. R.*, 543; *N. H. Cent. R. R.* v. *Johnson*, 10 *Foster R.*, 390.

They could not assess upon part of the shares, nor in unequal sums, and these assessments, having been made on only a portion of the shares of the corporation, were not in accordance with the charter, and can not bind the defendant. They were not legally made. The decision of this point goes to the foundation of the action, and shows that the suit cannot be maintained. 35 *Barb. R.*, 325; 1 *Caines R.*, 381.

The following cases are analagous in principle, though we do not claim that they are expressly in point: 1 *Handy R.*, 24; 11 *Peters R.*, 86; *N. H. Cent. R. R.* v. *Johnson*, 10 *Foster R.*, 402-3.

It is further maintained that there is no consideration alleged in the petition; the instrument on which the action is founded does not import a consideration, and it must therefore be alleged. *Van Santvoord's Pl. pp.* 216-220; *Bristol* v. *Rensselaer and Saratoga R. R. Co.*, 9 *Barb. R.*, 158; *Bailey & Bogart* v. *Freeman*, 4 *Johnson R.*, 280; *Saxton & Hutchinson* v. *Johnson*, 10 *Johns. R.*, 418; *Lansing* v. *M'Killip*, 3 *Caines R.*, 286; *Barnet* v. *Bisco*, (see also 296) 4 *Johns. R.*, 235; *Trott* v. *Sarchette*, 10 *O. St.*, 241; 1 *Chitty Pl., pp.* 262 (*295); *T. of P. L. Academy* v. *Davis*, 11 *Mass. R.*, 113; *T. of B. Academy* v. *Gilbert*, 2 *Pick. R.*, 579.

The statute of 1859, p. 301, does not apply to this contract, it being executed before the passage of that act, consequently the consideration must be alleged and proved. There is no mutuality in the alleged contract between plaintiff and defendant. It does not appear that the plaintiff gave or agreed to give anything to the defendant for his promise, or that the defendant became the owner of anything thereby. *U. & S. R. R. Co.* v. *Brinckerhoff*, 21 *Wend. R.*, 139; *Acker & Chapman* v. *Phœnix, et al.*, 4

*Page Ch. R.*, 305; *Lester* v. *Jewett*, 12 *Barb. R.*, 502; *Candler & Hart* v. *Rossiter*, 10 *Wend. R.*, 488; *Tucker* v. *Woods*, 12 *Johns. R.* 189; *Considerant* v. *Brisbane*, 6 *Duer R.*, 686; *Same* v. *Same*, 14 *How.*, *p.* 487.

The Topeka Bridge Company was under no obligation to issue stock or shares to the defendant, and the instrument sued on is void for uncertainty. It is not a contract with or to any person. *Cow. Trea.*, *p.* 146; 2 *Kent Com.*, *455 *471, (10 *ed.*); *Angell & Ames Corp.*, (2d *ed.*) *page* 190; *Essex Turnp. Co.* v. *Collins*, 8 *Mass. R.*, 292.

Secondly. We maintain that a subscription to the capital stock of the Topeka Bridge Company made by defendant "to be paid in work," is void. It is nowhere expressly provided in the charter or by-laws that subscriptions to capital stock may be "paid in work;" so the authority of the company thus to contract comes by way of implication, if at all. The charter provides that the capital stock of the company shall be one hundred thousand dollars, to be divided into shares of one hundred dollars each, and that it gives the company power to prescribe by-laws for its regulation and receive and collect subscriptions to such capital stock.

Now, can it be contended, construing the charter strictly, that a subscription for capital stock payable "in work" is valid? Clauses, general though they be, are to be controlled and governed by the express powers contained elsewhere in the charter, and that "all other acts and things" to be done, must be auxiliary to the main purpose, as indicated in the express provisions. By the 13th section of the general corporation act of 1855, statute, p. 188, individual liability in case of the failure of corporate assets, and there being no stipulations in the charter to the contrary, extends to double the amount of capital stock subscribed. Now, the liability to pay depends upon the express promise. The defendant has agreed to pay *work*, but the express provisions of the charter demand *money*, and it follows that the

plaintiff has made a contract diametrically opposed to the law of its nature, and it must therefore fall.

This is the major proposition upon which the second ground of our argument is founded, and is in our opinion the surest test of the power of the corporation to enforce this alleged contract against the defendant. If we attempt to construe the charter otherwise, the reason fails, and as Coke on Littleton says: " *Cessante ratione legis cessat ipsa lex,*" reason is the soul of the law, and when the reason of any particular law ceases so does the law itself.

It is nowhere alleged that this species of subscription was authorized by the company, or that any agent was duly authorized on the part of the company thus to contract with the defendant. This omission in our opinion constitutes a fatal defect in the plaintiff's petition. It matters not that the agent with whom defendant contracted has power thus to contract, it must be none the less clearly and definitely alleged. *Angell & Ames Corp.*, sec. 231, (*6th ed.*); *Hayden et al.* v. *Middlesex Turnp. Co.*, 10 *Mass. R.*, 397; *Angell & Ames Corp.*, sec. 239, (*6th ed.*); *Burdick* v. *Champl. Glass Co.*, 8 *Vt. R.*, 19.

It is further contended that upon the plainest principles of law the agent of the corporation with whom defendant contracted had no right to consummate a subscription payable otherwise than in money. *Story on Agency*, secs. 98, 99, 101, 87; *Smith's Mercantile Law*, 160; 11 *Texas R.*, 764.

"It is the very essence of a contract that it be mutual, and that there be parties to it; to be valid it must also be founded on a consideration." *Angell & Ames Corp.*, p. 271, sec. 255, (*6th ed.*), *and numerous authorities cited, note* 1; *Essex Turnp. Corp.* v. *Collins*, 8 *Mass. R.*, 381; *Union Turnp. Corp.* v. *Jenkins*, 1 *Caines R.*, 381; *Opinion of Lewis, C. J.*; *Trott* v. *Sarchette, et al.*, 10 *O. S. R.*, 245.

There is another fatal defect in the plaintiff's petition. It contains no allegation of a demand of the defendant of the performance of the work, or a request to perform the

same according to the contract. The allegation in the petition, "all of which said defendant then and there had notice," does not amount to a *licet sœpe requisitus.* "Whenever it is essential to the cause of action that the plaintiff should have requested the defendant to perform his contract, such request must be stated in the declaration and proved." (1 *Chitty's Plead.* \*323.) "But when by the express or implied terms of the contract, it was incumbent on the plaintiff before the commencement of his action to request the defendant to perform his contract, such request being as it were a condition precedent must be averred." *Chitty's Plead.*, \*324; *Comyn's Dig.*, "C," 69, 73; 1 *Saund., Plead., p.* 33, note 2; *Cow. Trea*, 1170; *Fry's Executor* v. *Lexington and Big Sandy R. R. Co.*, 2 *Met. (Ky.) R.*, 321; *Union Turnpike. Co.* v. *Jenkins*, 1 *Caines R.*, 381; *Trott* v. *Sarchette, et al.*, 10 *Ohio St. R.*, 245-6.

It was argued in the court below that the defendant having contracted with the company and thereby acknowledging its being, is estopped from denying its existence afterwards, or denying the formation of the company. The rule has no application to the case at bar. It applies to persons who are declared to be an incorporation in the first instance; persons having contracted with the corporation, are held to have impliedly admitted its existence. But to the rule there are numerous exceptions. See *Cary v.* Cincinnati and Chicago R. R. Co., 5 Iowa R., 357, where the doctrine is laid down by Wright, C. J., with much force, and the cases are reviewed and analyzed most ably. *Briggs* v. *Penniman, et al.*, 8 *Cow. R.*, 387; *Slee* v. *Bloom, et al.*, 19 *Johns. R.*, 456.

*By the Court,* CROZIER, C. J.

This was an action upon the following agreement subscribed by the defendant and five others, each of the six subscribers taking one share of one hundred dollars.

"TOPEKA, K. T., Nov. 21, 1857.

"We, the subscribers, agree to take the number of shares in the Topeka Bridge Company, set opposite to our respective names, and pay installments upon the same as may be required by the rules and regulations of the company."

The petition also incorporates the rules and regulations of the company, and avers that the company built a bridge and made calls for the payment of the whole amount of the stock subscribed, in accordance with their rules and regulations, and default of payment on the part of defendant.

The defendant filed a demurrer specifying several grounds, among others that the petition did not state facts sufficient to constitute a cause of action. Upon issue joined, the demurrer was sustained upon this ground.

The plaintiff excepted and brings the case to this court.

From the petition it nowhere appears by direct averment or by inference that more than six hundred dollars of the stock of the Bridge Company was ever taken.

The question therefore presented in this case, is whether a party subscribing shares in this corporation is liable to pay the same before the whole capital stock is subscribed.

The first and second sections of the law (act approved Feb. 14th, 1857,) under which the company was organized, are as follows:

"SEC. 1. The right and privilege of building and maintaining a bridge across the Kansas River at any point upon said river not less than five nor more than ten miles above the village of Tecumseh, is hereby granted for the period of twenty-one years, to F. L. Crane, Thomas G. Thornton, M. C. Dickey, S. T. Walkley and L. G. Cleaveland, or their assigns, or such persons as may be associated with them for that purpose.

"SEC. 2. Said Crane and other persons named in the foregoing section, or a majority of them, are hereby au-

thorized to form a company to be known as the Topeka Bridge Company, the capital stock of which shall be one hundred thousand dollars, to be divided into shares of one hundred dollars each, and shall have power to prescribe by-laws for the regulation of said company, receive and collect subscriptions to such capital stock, establish and collect tolls for crossing said bridge, sue and be sued, hold and convey real estate, so much as may be necessary for the construction of said bridge, and do all other acts and things, and exercise all the rights and privileges, appertaining to corporations."

An examination of these sections and of the instrument on which this suit is brought, will show that unless the whole amount of stock was subscribed, there could be no obligation to pay. The law provides that the capital stock *shall* be $100,000, to be divided into shares of one hundred dollars each. The defendant took one of the shares and agreed to pay installments thereon as required by the rules and regulations of the company. What company? A company having a stock of one hundred thousand dollars. That is, he took one-thousandth part of the stock and agreed to pay such assessments upon that part of the stock as might be necessary to build the bridge.

If the cost of the bridge was only ten thousand, then an assessment of ten per cent. only would be necessary, and the defendant when he subscribed would make his estimates of the cost of building the bridge and calculate how much he would have to pay on the share he subscribed, and if he should estimate the cost at $10,000 and that sum should be found sufficient, then the only assessment he would be called on to pay would be ten dollars. If his estimates were too low, then he would have to pay more, if too high, less. That was all he undertook to do in any event. This being all admitted, it would only limit the amount which the plaintiff had a right to recover, not his right of action. But the defendant took stock in a com-

pany having a capital of $100,000. The plaintiff seeks to make him responsible in a company having a capital of only $600. Defendant agreed to pay assessments on the *share* he took. A share of what? A share of the capital stock of the company, and this capital stock is ascertained by reference to the act of incorporation to be one hundred thousand dollars.

He took no stock in a company having a subscribed capital of $600; is under no legal obligations to pay to such a company.

As the petition presents the case, six shares only have been subscribed, and yet the bridge was built. If the six shares were sufficient to build the bridge, then, as we have seen, the defendant only undertook to pay his share of one in a thousand in that amount, and before he could be compelled even to pay that, he had a right to have the other nine hundred and ninety-nine shares subscribed in good faith, so that he could enjoy his interest in the corporate stock in his due proportion, unburthened with debts which he had not contemplated when he subscribed his stock. Under the act of incorporation in this case a *bona fide* subscription of the whole amount of the capital stock was an indispensible condition precedent before the corporation could be authorized to act. Each subscriber undertakes to pay the amount of his subscription only upon the condition that the whole amount required to be taken to enable the company to organize and act in its corporate capacity shall be subscribed.

These conclusions are not only in conformity with a rational interpretation of the contract and the act of incorporation, but are upheld and illustrated by a uniformity of decisions seldom observable in a question of law.

Such an organization as the law required being necessary to enable the company to enforce their demand in this case, an averment of the facts necessary to show such organization should have been made in the petition in or-

der that if controverted they might have been proven. This not having been done the demurrer was properly sustained.

All the justices concurring.