No. 33,022

F. C. Norton, as Trustee in Bankruptcy for The S. M. Finney
Stores Company, *Appellee*, v. Bert W. Lamb, *Appellant*.

(62 P. 2d 1311)

Opinion filed December 12, 1936.

*David Ritchie* and *C. B. Dodge, Jr.,* both of Salina, for the appellant.
*John H. Wilson,* of Salina, for the appellee.

The opinion of the court was delivered by

Thiele, J.: From a judgment awarded against him for an unpaid subscription for stock in a corporation which was thereafter declared insolvent the defendant appeals.

Appellant Lamb and six other persons applied for and received a charter for The S. M. Finney Stores Company, which stated that the shares of common stock of no par value would be sold at $1 per share, and the amount of capital with which it would begin business was $20,000; that the estimated value of its goods, etc., was $20,000; that the capital stock was $250,000, divided into 100,000 shares of stock without nominal or par value, and 1,500

shares of preferred stock with par of $100 per share, and that appellant was the holder of 1,000 shares. When the corporation was organized, however, certain of the incorporators doubled the amount of their subscription to the nonpar stock, and the record shows that certificate No. 9 was issued on July 7, 1930, to Lamb, for 2,000 shares, for which he gave $1,000 cash and his note for a like amount. Other of the incorporators did likewise. Although he was supposed to give a note, Lamb did not do so immediately, and·ultimately refused to do so. Lamb was treasurer of the corporation, a member of the board of directors and of the executive committee of the board during the life of the corporation. The business got under way in June, 1930, and early in 1931 it became apparent it would fail. Appellant and certain other of the incorporators arranged to surrender their certificates of stock and to receive new ones for one half the amount of shares, their unpaid notes to be returned. Lamb's new certificate was dated February 6, 1931. On February 11, 1931, the corporation was adjudged bankrupt and the plaintiff was later directed and authorized to institute the present action. Issues were joined and a trial was had, the jury returning a verdict in favor of plaintiff and answering special questions which will be referred to later so far as is necessary. Although the assignments of error cover a wide range, we shall discuss appellant's contentions as presented in his brief.

As has been noted, the stated capital stock was $250,000, the amount with which the corporation would begin business being $20,000. In answer to a special question as to how much had been subscribed, the jury answered $20,000. On motion of plaintiff the trial court set aside this answer as being contrary to the evidence. An examination of the record shows that stock in the amount of at least $37,000 was subscribed for and paid for either with cash, notes or merchandise. Appellant's contention is that unless there is a governing statute or an agreement to the contrary there is an implied contract that the subscriber to stock in a corporation will not be required to pay the subscription price, except enough to pay preliminary expenses of organization, unless and until all of the capital stock has been subscribed. Considering there is a rule of law to the above effect (7 R. C. L. 231), is it of any effect in view of our statutes and decisions? It is apparent the charter was granted under that portion of our corporations act dealing with nonpar stock; which provides the charter shall state the amount

of capital with which the corporation will begin business, and that no corporation shall begin business or incur any indebtedness until that amount shall have been fully paid in cash or property, and that for the purpose of the act the stated capital shall be the capital with which the corporation will begin business, etc. (R. S. 17-301, 17-302, 17-303.) And under the general corporation act, it is provided that no corporation for profit shall begin business until a certificate affidavit has been filed stating that not less than 20 percent of the authorized capital has been paid in actual cash or property equivalent thereto. (R. S. 17-214.) It thus clearly appears that our statutes do not require the entire capital to be paid as a condition precedent to beginning of business. Provision is also made for opening of books for receiving subscriptions for stock when the full amount has not already been subscribed (R. S. 17-226); for calling for payment of stock subscriptions (R. S. 17-605); for forfeiture for failing to pay calls (R. S. 17-606), and authorizing suit to collect arrears, debts, dues and demands from members as well as from others (R. S. 17-607).

Appellant relies on *Topeka Bridge Co.* v. *Cummings*, 3 Kan. 55, decided in 1864, in which it was held that the total capital not being subscribed, a subscriber for stock was not liable. In that case, however, the court found that the statute of 1857, under which the corporation was formed, and the instrument sued on, showed that unless the whole amount of stock was subscribed there could be no obligation. Thereafter and in the revision of 1868, a comprehensive corporation act was passed. The question involved as arising under the 1868 statute came before this court in 1873 in *Hunt* v. *K. & M. Bridge Company*, 11 Kan. 412, 436, it being there held that a stockholder could be compelled to pay the full amount of his subscription although only one tenth of the capital stock had been taken. The question was said to be one of statutory law, depending on statutes of our state to which reference is made in the opinion. The above holding does not seem to have been departed from, and an examination of our statutes, as above noted, shows it should not be. Where by statute a corporation is permitted to start business and incur indebtedness with less than the total authorized stock subscribed, where provision is made for subscription books, for calls for unpaid subscriptions, and for suits to enforce collection, we are compelled to conclude that in the case before us it was no defense on Lamb's part, when sued for un-

paid subscription, to show the entire authorized capital had not been subscribed.

Appellant also contends that it not having been shown the corporation had complied with the provisions of the securities act (R. S. 1933 Supp. 17-1223 *et seq.*) with respect to registration of stock, plaintiff cannot recover. It may be noted that no such defense was pleaded; the defense was that Lamb had not subscribed for the stock. But assuming the stock were subject to the provisions of the act, and that appellant may raise the defense without pleading it, it cannot avail him. He was an incorporator, he was an original subscriber, he was a director of the corporation, the treasurer of it, and a member of the executive committee of the board of directors. If the stock had to be registered, it was a part of his duties to see that it was done. He will not now be heard to raise the question.

Appellant further contends that under R. S. 17-306 the shares issued to him, being without par value, are nonassessable and he is not liable thereon to the corporation and its creditors. The contention ignores the facts of the case and the provisions of R. S. 17-305, which provides the shares may be disposed of for such consideration as may be prescribed. Appellant acquired the shares without paying the agreed consideration. The statute upon which he relies means no more than that if he has paid for his shares he cannot be assessed or held further liable on them; it does not mean he cannot be compelled to pay for his stock as originally subscribed.

Appellant's next contention is divided into two parts. It is stated there is a variance between pleading and proof based on the fact that while the petition charged he subscribed for 2,000 shares for which he agreed to pay $2,000, and that he had paid only $1,000 and owed $1,000, the jury in answer to special question No. 1 propounded by the defendant as to whether he agreed to take and pay for over 1,000 shares, stated:

"Yes. He agreed to pay for it out of the earnings from his stock."

The contention ignores a question propounded by plaintiff and also another propounded by the defendant, viz., plaintiff's question No. 6:

"Did Mr. Lamb agree to take 2,000 shares? A. Yes."

Defendant's question No. 2:

"If you answer question No. 1 'yes,' then state how many shares of the capital stock . . . the defendant agreed to take. A. 2,000."

It is also argued that under the jury's answer the subscription is to be paid out of a special fund, and before recovery could be had it was necessary that such a fund exist or that defendant by his acts prevented it.

As the answer to this contention provides a solution of the question of variance, it will be treated first. The matter of the subscription being conditional was not pleaded. There was some evidence that notes given by the incorporators for additional stock were to be paid out of earnings, and that appellant agreed to give such a note, but did not. Based on testimony of this sort, the jury found that Lamb had agreed to take 2,000 shares, and that he agreed to pay for the second 1,000 shares out of the earnings of his stock. Under such situation, it cannot be disputed that if his subscription was conditional, the condition was subsequent and not precedent. A somewhat similar situation obtained in *Sarbach v. Fiscal Agency Co.*, 86 Kan. 734, 122 Pac. 113. One McNeal subscribed for stock for which he gave his note, the corporation giving him a separate writing by which it was agreed the note would not be discounted prior to maturity, and that the subscriber should have certain surrender privileges. The note was negotiated prior to maturity and the maker compelled to pay it. The corporation became insolvent and the subscriber sought to recover against the receiver. The question presented was the validity of the agreement, and it was held to be well settled the rule is that a subscriber upon a condition subsequent is liable as a stockholder and the corporation liable upon the agreement; that if the corporation were solvent possibly the agreement would be enforceable, but when insolvency occurred he could not insist on an agreement the effect of which put him in a more favorable position than other stockholders who paid in full for their stock.

In 14 C. J. 570 it is said that a corporation has no power to receive a subscription on terms that will operate as a fraud on some stockholders by subjecting other stockholders to lighter burdens, or giving one greater rights and privileges than are granted others, the Sarbach case being cited with many others in support of the text.

In an annotation as to the validity and effect of such extrinsic agreements absolving one, in whole or in part, from liability on stock subscription, in 81 A. L. R. 198 *et seq.* it is stated the cases are unanimous in support of the rule that an extrinsic or collateral agreement between the subscriber and the corporation whereby the subscriber is not fully liable on his subscription contract, is invalid

and void, as it constitutes a fraud upon creditors, other subscribers and stockholders of the corporation (1. c. 202), and that such liability is generally enforced (l.c. 205), many cases, including the Sarbach case, being cited in support.

Without pursuing the subject further, we conclude that the subscription for the additional 1,000 shares was binding on appellant, but the agreement the same was to be paid out of earnings is not enforceable as against the appellee, the trustee in bankruptcy.

Reverting now to the question of variance, it is clear that the agreement as indicated in the jury's answer being unenforceable, there was in fact no variance, real or apparent.

It does not appear there was any error in the matters of which complaint is made, and the judgment of the trial court is affirmed.